FUENTES, Circuit Judge.
 

 Jean Charte was sued by her former employers in New Jersey state court for defamation, tortious interference with advantageous economic relations, and product disparagement. While that lawsuit was pending, Charte brought this
 
 qui tam
 

 [1]
 
 action against her former employers on behalf of the United States and the State of New Jersey. As required by the False Claims Act, the
 
 qui tam
 
 action was filed under seal and remained under seal while
 the United States Government investigated the allegations and decided whether to intervene in the action.
 
 [2]
 

 The
 
 qui tam
 
 action remained under seal for over seven years, as the Government considered whether to intervene.
 
 [3]
 
 During this lengthy seal period, the state court action was dismissed without prejudice after the parties entered into a settlement agreement. Five years later, the Government chose not to intervene in the
 
 qui tam
 
 action, and the District Court unsealed the complaint.
 
 [4]
 
 Accordingly, pursuant to the False Claims Act, Charte proceeded with the
 
 qui tam
 
 action against her former employers.
 
 [5]
 

 At the summary judgment stage, the District Court found that the
 
 qui tam
 
 action was barred by New Jersey's equitable entire controversy doctrine and effectively dismissed the complaint. We disagree and conclude that the entire controversy doctrine is inapplicable. For the following reasons, we will vacate the judgment of the District Court and remand for further proceedings.
 

 I.
 

 From July 2005 until her termination in September 2007, Jean Charte was employed by American Tutor, Inc. ("American Tutor"), a family-owned corporation that provides tutoring services to school districts in New Jersey and other states. Charte initially worked as a tutor in the Asbury Park School District. The following year, in July 2006, she became a regional district manager. As District Manager, Charte supervised the tutoring services provided by American Tutor to several school districts in New Jersey.
 

 During her time as District Manager, Charte became aware of American Tutor's questionable billing and recruiting practices. In the summer of 2007, she began to express her concerns to James M. Wegeler
 
 [6]
 
 and Sean Wegeler, brothers who served as officers of American Tutor. That fall, in September 2007, Charte was terminated. Thereafter, Charte contacted the New Jersey Department of Education and the United States Department of Education, among others, and informed them about the practices she had observed while employed by American Tutor.
 

 A. The State Court Action
 

 Nearly one year after Charte's termination, Jim Wegeler, the owner of American Tutor, his son James M. Wegeler,
 
 [7]
 
 and American Tutor filed a complaint in the Superior Court of New Jersey against Charte and her new employers. The complaint asserted three tort claims against Charte: defamation, tortious interference with advantageous economic relations, and product disparagement.
 
 [8]
 
 It alleged,
 
 inter
 

 alia
 
 , that, after her termination, Charte made "false and defamatory statements to third parties" about Jim Wegeler, his son James M. Wegeler, and American Tutor, "including but not limited to allegations of illegal and unethical business practices."
 
 [9]
 
 The third parties were identified as American Tutor's business competitors, American Tutor's clients, school district officials, New Jersey Department of Education officials, and United States Department of Education officials.
 

 In January 2009, Charte answered the complaint and asserted several counterclaims, including one for defamation. Over three and a half years later, all parties in the state court action signed an "Agreement Regarding Terms of Dismissal."
 
 [10]
 
 Under the agreement, Charte and her former employers agreed to dismiss, without prejudice, all claims and counterclaims asserted in the state court action. The next month, in August 2012, the Superior Court of New Jersey dismissed the case pursuant to the agreement.
 

 B. The Federal
 
 Qui Tam
 
 Action
 

 While the state court litigation was ongoing, in June 2010, Charte filed this
 
 qui tam
 
 action in the District Court against Jim Wegeler, his sons James M. and Sean Wegeler, and American Tutor. She alleged that her former employers violated both the New Jersey and federal False Claims Acts
 
 [11]
 
 by,
 
 inter alia
 
 , submitting false claims to local school districts in New Jersey for reimbursement of tutoring services.
 
 [12]
 
 In particular, American Tutor allegedly submitted invoices for payment of "tutoring services that were never received by students" by billing "for students who were absent from tutoring services," and also billing "in numbers in excess of actual students participating" in the tutoring services.
 
 [13]
 
 Moreover, according to the complaint, the Wegelers "authorized and ratified" the alleged violations of the False Claims Acts.
 
 [14]
 

 In accordance with the requirements of the Acts, the
 
 qui tam
 
 action was filed under seal and remained sealed while the Government investigated Charte's claims.
 
 [15]
 
 During this seal period, Charte could not disclose the existence of the
 
 qui tam
 
 action. As a result, Charte's former employers were unaware that they held two simultaneous roles in different forums: they
 were plaintiffs in state court and defendants in federal court. It was during this mandatory seal period that the state court action was settled and dismissed.
 

 The
 
 qui tam
 
 action stayed under seal for over seven years-until October 2017,
 
 [16]
 
 when the District Court unsealed the complaint after being notified by the Government of its decision not to intervene.
 
 [17]
 
 As a result, Charte proceeded as the
 
 qui tam
 
 relator and served the complaint on American Tutor.
 
 [18]
 

 In February 2018, American Tutor moved for summary judgment. The next month, pursuant to its unsealing order, the District Court requested the Government's input before ruling on the motion. The Government did not oppose dismissal of the action "should the Court determine that such dismissal is appropriate under the law, so long as such dismissal is without prejudice" to the Government.
 
 [19]
 

 The District Court granted summary judgment to American Tutor in April 2018. Describing Charte as "engag[ing] in just the kind of litigation gamesmanship the entire controversy doctrine is designed to prevent," the Court found that, given the circumstances, it was "fundamentally fair" to apply the entire controversy doctrine and thus bar the
 
 qui tam
 
 action.
 
 [20]
 
 Charte now appeals that decision.
 
 [21]
 

 II.
 

 Before addressing the merits of this appeal, we will discuss the statutory background
 of the False Claims Act and the principles underlying the entire controversy doctrine.
 
 [22]
 

 A.
 

 The False Claims Act imposes civil liability on anyone who "knowingly presents ... a false or fraudulent claim for payment or approval" to the United States Government.
 
 [23]
 
 Under the Act, "a private person (the relator) may bring a
 
 qui tam
 
 civil action 'for the person and for the United States Government' against the alleged false claimant, 'in the name of the Government.' "
 
 [24]
 
 Thus, "[t]he relator's right to recovery exists solely as a mechanism for deterring fraud and returning funds to the federal treasury."
 
 [25]
 

 If the Government intervenes, the relator may "continue as a party to the action," but the Government has "the primary responsibility for prosecuting the action."
 
 [26]
 
 On the other hand, if the Government declines to intervene, as occurred here, the relator has "the right to conduct the action."
 
 [27]
 
 Notably, notwithstanding its initial decision to not intervene, the Government may subsequently intervene "upon a showing of good cause."
 
 [28]
 

 B.
 

 The entire controversy doctrine is "essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles."
 
 [29]
 
 The doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy."
 
 [30]
 
 The purposes of the entire controversy doctrine "are threefold: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay."
 
 [31]
 

 In determining whether a claim is barred by the doctrine, a court's "central consideration" is whether the claim "arise[s] from related facts or the same transaction or series of transactions."
 
 [32]
 
 "It is the core set of facts that provides the link between distinct claims against the same or different parties and triggers the requirement that they be determined in one proceeding."
 
 [33]
 
 Additionally, the entire controversy doctrine applies "only when a prior action based on the same transactional facts has been tried to judgment or settled."
 
 [34]
 

 However, the doctrine is "constrained by principles of equity."
 
 [35]
 
 It remains an equitable rule of preclusion "whose application is left to judicial discretion based on the factual circumstances of individual cases."
 
 [36]
 
 Accordingly, the entire controversy doctrine's equitable nature "bars its application where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency."
 
 [37]
 

 III.
 

 With the foregoing statutory and equitable framework in mind, we now turn our attention to this case. Here, the factual-nexus requirement of the entire controversy doctrine is satisfied; the state court action and the
 
 qui tam
 
 action both relate to American Tutor's allegedly fraudulent billing practices.
 
 [38]
 
 Nonetheless, considering the totality of the circumstances, we hold that the entire controversy doctrine does not apply to the instant
 
 qui tam
 
 claims.
 

 To reiterate, we must determine the preclusive effect of the resolution of state tort litigation on a
 
 qui tam
 
 action that was filed while the state action was pending. For three reasons, we are persuaded that preclusion would be unfair to both Charte as the named-party-relator and the Government as the real party in interest.
 
 [39]
 

 First,
 
 qui tam
 
 claims belong to the Government, not to relators. Accordingly, the
 
 qui tam
 
 claims in this case do not belong to Charte and did not belong to her when she entered into the settlement agreement. To apply the entire controversy doctrine and hold that the settlement agreement precludes this
 
 qui tam
 
 action would essentially be to endorse the opposite: that the
 
 qui tam
 
 action belonged to Charte and thus, that she could unilaterally negotiate, settle, and dismiss the
 
 qui tam
 
 claims during the Government's investigatory period. Such a decision would not only be unfair to the Government's interests, it would also conflict with the False Claims Act's rule that pending
 
 qui tam
 
 actions may be voluntarily dismissed by relators "only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."
 
 [40]
 

 Second, Charte followed every statutory requirement that applies to
 
 qui tam
 
 relators, including filing the
 
 qui tam
 
 action under seal and not disclosing its existence until ordered to do so by the District Court. It would therefore be a Catch-22 for us to consider her failure to inform American Tutor of the
 
 qui tam
 
 action as weighing in favor of application of the entire controversy doctrine.
 

 Charte tried to litigate this case out in the open. Over the course of six months and
 
 before
 
 settling the state court action, she made two attempts to lift the seal on the
 
 qui tam
 
 action. In January 2012, at a point when the case had been under seal for a year and a half, Charte filed a motion to lift the seal and consolidate the state court action with the
 
 qui tam
 
 action. Three months later, in April 2012, her counsel sent a letter (1) reiterating the request, (2) emphasizing that time was of the essence because American Tutor had moved for summary judgment in the state court action, and (3) stressing that the seal meant Charte could "make no mention of the pending qui tam case."
 
 [41]
 
 Charte's hands were tied. It was not until August 2012-over six months after the motion to lift the seal was filed-that the District Court denied the motion. Although Charte settled the state court action before the District Court ruled on her motion to lift the seal and consolidate, the procedural history of the
 
 qui tam
 
 action shows that she took proactive steps to try and avoid that situation. Charte was thus not trying to hide the ball.
 
 [42]
 

 Third, and finally, application of the entire controversy doctrine to this case, where the relator was the defendant in a previously filed private suit, would incentivize potential False Claims Act defendants to "smoke out"
 
 qui tam
 
 actions by suing potential relators and then quickly settling those private claims with the sole purpose of subsequently relying on that settlement to bar a
 
 qui tam
 
 action.
 
 [43]
 
 We decline to give potential defendants a path toward immunizing themselves against False Claims Act liability.
 

 Fairness thus requires that Charte have the opportunity to pursue this
 
 qui tam
 
 action on behalf of the Government.
 

 IV.
 

 According to American Tutor, fairness favors preclusion here because Charte could have, and therefore should have, brought the
 
 qui tam
 
 action as a counterclaim in state court. We disagree.
 

 As a preliminary matter, we agree with American Tutor that state courts have concurrent jurisdiction over claims brought under the federal False Claims Act. The statutory language provides that a claim under the Act "may be brought in any judicial district" where a defendant "resides [or], transacts business, or in which any act proscribed by section 3729 occurred."
 
 [44]
 
 We read the broad term "judicial district" to include state courts.
 
 [45]
 
 As a result, Charte could have filed the
 
 qui tam
 
 action in state court.
 

 However, we are not persuaded that she
 
 had to
 
 bring the
 
 qui tam
 
 claims in state court. Charte's decision to file instead the claims in federal court is not the "deliberate manipulation and forum shopping" of a party who (i) brought a counterclaim in another state, only to (ii) voluntarily dismiss the counterclaim, and (iii) bring the same claim anew in New Jersey.
 
 [46]
 
 Charte never brought the
 
 qui tam
 
 claims in the state forum, never voluntarily dismissed the claims, and never traveled to a different state to re-litigate the claims.
 

 American Tutor's argument to the contrary ignores a crucial aspect of
 
 qui tam
 
 litigation:
 
 qui tam
 
 claims must remain under seal until the Government decides whether it will intervene.
 
 [47]
 
 This rule applies in both state and federal courts. Therefore, even if Charte had filed her
 
 qui tam
 
 claims as counterclaims in the state action, American Tutor would have still been unaware of them.
 
 [48]
 

 V.
 

 For the foregoing reasons, we vacate the District Court's grant of summary judgment in favor of American Tutor, and remand for further proceedings.
 

 "
 
 Qui tam
 
 is short for the Latin phrase
 
 qui tam pro domino rege quam pro se ipso in hac parte sequitur
 
 , which means 'who pursues this action on our Lord the King's behalf as well as his own.' "
 
 Vt. Agency of Natural Res. v. United States ex rel. Stevens
 
 ,
 
 529 U.S. 765
 
 , 769 n.1,
 
 120 S.Ct. 1858
 
 ,
 
 146 L.Ed.2d 836
 
 (2000). Under the False Claims Act, "a private person, known as a relator, may bring a
 
 qui tam
 
 civil action 'for the person and for the United States Government' against the alleged false claimant, 'in the name of the Government.' "
 
 Cochise Consultancy, Inc. v. United States ex rel. Hunt
 
 , --- U.S. ----,
 
 139 S. Ct. 1507
 
 , 1510,
 
 203 L.Ed.2d 791
 
 (2019) (quoting
 
 31 U.S.C. § 3730
 
 (b)(1) ).
 

 See
 

 31 U.S.C. § 3730
 
 (b)(2) (providing that complaints filed by private persons must "be filed in camera" and "remain under seal for at least 60 days").
 

 See
 

 id.
 

 § 3730(b)(3) (stating that the Government "may, for good cause shown, move the court for extensions" of the sixty-day seal period).
 

 See
 

 id.
 

 § 3730(b)(4)(B).
 

 See
 

 id.
 

 § 3730(c)(3).
 

 James M. Wegeler was improperly plead in the
 
 qui tam
 
 action as "James Wegeler, Jr." Wegeler Decl. ¶ 1, JA 98.
 

 James M. Wegeler was also improperly plead in the state court action as "James Wegeler, Jr."
 

 Id.
 

 at ¶ 2
 
 , JA 98.
 

 The complaint asserted the following claims against Charte's new employers: negligent hiring, negligent retention, and negligent supervision. The complaint also sought to hold the new employers liable for Charte's tortious conduct on a theory of respondeat superior.
 

 JA 26.
 

 Id.
 

 at 67
 
 .
 

 See
 

 31 U.S.C. § 3729
 
 (a)(1) ; N.J. Stat. Ann. § 2A:32C-3.
 

 Under Title I of the Elementary and Secondary Education Act of 1965, the federal Government provides funding to States for supplemental educational services such as tutoring.
 
 See
 

 Nat'l Fed'n of Indep. Bus. v. Sebelius
 
 ,
 
 567 U.S. 519
 
 , 638 n.22,
 
 132 S.Ct. 2566
 
 ,
 
 183 L.Ed.2d 450
 
 (2012) (Ginsburg, J., concurring in part and dissenting in part) ("Title I of the Elementary and Secondary Education Act of 1965 provided federal grants to finance supplemental educational programs in school districts with high concentrations of children from low-income families."). States then disburse the federal funding through local boards of education. New Jersey and its local school districts received Title I funding for the purpose of providing supplemental educational services.
 

 JA 54.
 

 Id.
 
 at 55, 57.
 

 See
 

 31 U.S.C. § 3730
 
 (b)(2) ; N.J. Stat. Ann. § 2A:32C-5(c) ;
 
 see also
 

 United States ex rel. Grupp v. DHL Express (USA), Inc.
 
 ,
 
 742 F.3d 51
 
 , 54 (2d Cir. 2014) (citing
 
 United States ex rel. Pilon v. Martin Marietta Corp.
 
 ,
 
 60 F.3d 995
 
 , 998-99 (2d Cir. 1995) ) (explaining that "[t]he purpose of the sealing provisions is to allow the government time to investigate the alleged false claim and to prevent
 
 qui tam
 
 plaintiffs from alerting a putative defendant to possible investigations").
 

 The seal period was so long because Charte consented to (and the Court approved) the Government's repeated requests to extend the initial sixty-day seal period.
 
 See
 

 31 U.S.C. § 3730
 
 (b)(3).
 

 Our dissenting colleague thus correctly notes that American Tutor "spent seven years in the dark about Charte's
 
 qui tam
 
 claim." Dissent Op. 355-56. We nevertheless emphasize that the Government, not Charte, is largely responsible for the length of this case. Notwithstanding Charte's consent to some extensions, most of the seven-year period is directly attributable to the Government. After the District Court gave the Government until February 1, 2013 to decide whether it would intervene, the Government sought, and received, extensions from the Court, this time without Charte's consent. It was not until four and a half years passed, and Charte's motion urging the Government to act, that the Government finally decided not to intervene and the District Court could therefore unseal the complaint.
 

 We note that during the seal period, in June 2016, the Government brought criminal charges against Jim Wegeler, alleging tax evasion, in violation of
 
 26 U.S.C. § 7201
 
 , and tax fraud, in violation of
 
 26 U.S.C. § 7206
 
 (2). After Wegeler pled guilty to one count of tax evasion and one count of tax fraud, Charte filed a "Motion to Intervene in the Criminal Proceedings for a Limited Reason and for a Relator's Share Award" in the criminal matter and the
 
 qui tam
 
 action before us. JA 20. The District Court denied the motion. Charte's consolidated appeal of that denial is currently pending before our Court.
 

 Notwithstanding Charte's allegations under the New Jersey False Claims Act, the record does not address whether the Attorney General of the State of New Jersey also declined to intervene.
 
 See
 
 N.J. Stat. Ann. § 2A:32C-5(d) (requiring the Attorney General to be served with,
 
 inter alia
 
 , a copy of the complaint);
 

 id.
 

 § 2A:32C-5(g) (requiring the Attorney General to "file a pleading with the court" indicating whether he wishes to intervene in the
 
 qui tam
 
 action).
 

 See
 

 31 U.S.C. §§ 3730
 
 (b)(2), (c)(3). For the sake of brevity, in discussing the
 
 qui tam
 
 action, we will only refer to defendant American Tutor.
 

 JA 124.
 

 Id.
 

 at 16
 
 .
 

 The District Court had jurisdiction under
 
 28 U.S.C. § 1331
 
 and
 
 31 U.S.C. § 3732
 
 . We have jurisdiction over this appeal under
 
 28 U.S.C. § 1291
 
 . We exercise plenary review over a district court's application of the entire controversy doctrine.
 
 Ricketti v. Barry
 
 ,
 
 775 F.3d 611
 
 , 613 (3d Cir. 2015).
 

 As we previously acknowledged, Charte asserted claims under both the federal False Claim Act and the New Jersey False Claims Act. For the sake of brevity, we will focus our discussion on the federal False Claims Act.
 

 31 U.S.C. § 3729
 
 (a)(1)(A).
 

 Vt. Agency of Natural Res.
 
 ,
 
 529 U.S. at 769
 
 ,
 
 120 S.Ct. 1858
 
 (quoting
 
 31 U.S.C. § 3730
 
 (b)(1) ). Accordingly, "[t]he Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."
 
 31 U.S.C. § 3730
 
 (c)(2)(A). The Government may also "settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances."
 

 Id.
 

 § 3730(c)(2)(B).
 

 James B. Helmer, Jr.,
 
 False Claims Act: Whistleblower Litigation
 
 1192 (7th ed. 2017) (footnote omitted).
 

 31 U.S.C. § 3730
 
 (c)(1).
 

 Id.
 

 § 3730(c)(3).
 

 Id.
 

 Rycoline Prod., Inc. v. C & W Unlimited
 
 ,
 
 109 F.3d 883
 
 , 886 (3d Cir. 1997).
 

 Cogdell by Cogdell v. Hosp. Ctr. at Orange
 
 ,
 
 116 N.J. 7
 
 ,
 
 560 A.2d 1169
 
 , 1172 (1989) ;
 
 see
 

 Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.
 
 ,
 
 237 N.J. 91
 
 ,
 
 203 A.3d 133
 
 , 137 (2019) ("The entire controversy doctrine 'seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible.' " (quoting
 
 Thornton v. Potamkin Chevrolet
 
 ,
 
 94 N.J. 1
 
 ,
 
 462 A.2d 133
 
 , 134 (1983) )).
 

 DiTrolio v. Antiles
 
 ,
 
 142 N.J. 253
 
 ,
 
 662 A.2d 494
 
 , 502 (1995) ;
 
 see
 

 Dimitrakopoulos
 
 ,
 
 203 A.3d at
 
 143 ;
 
 Wadeer v. N.J. Mfrs. Ins. Co.
 
 ,
 
 220 N.J. 591
 
 ,
 
 110 A.3d 19
 
 , 27 (2015) ;
 
 Cogdell
 
 ,
 
 560 A.2d at 1173
 
 .
 

 DiTrolio
 
 ,
 
 662 A.2d at 502
 
 .
 

 Id.
 

 Arena v. Borough of Jamesburg
 
 ,
 
 309 N.J.Super. 106
 
 ,
 
 706 A.2d 790
 
 , 792 (Ct. App. Div. 1998).
 

 Dimitrakopoulos
 
 ,
 
 203 A.3d at 138
 
 .
 

 Highland Lakes Country Club & Cmty. Ass'n v. Nicastro
 
 ,
 
 201 N.J. 123
 
 ,
 
 988 A.2d 90
 
 , 91 (2009) (quoting
 
 Oliver v. Ambrose
 
 ,
 
 152 N.J. 383
 
 ,
 
 705 A.2d 742
 
 , 748 (1998) ).
 

 Pressler & Verniero,
 
 Current N.J. Court Rules
 
 , cmt. 3.2 on R. 4:30A (2019);
 
 see also
 

 Wadeer
 
 ,
 
 110 A.3d at 27
 
 ("In considering whether application of the doctrine is fair, courts should consider fairness to the court system as a whole, as well as to all parties.").
 

 At oral argument, Charte's counsel attempted to distinguish the facts of the two actions. He asserted that the facts underlying the state court action relate to post-termination defamation, while the facts underlying the
 
 qui tam
 
 action relate to pre-termination events. We are not persuaded by this argument. Moreover, in briefing before the District Court in support of a motion to lift the seal and consolidate the actions, Charte asserted that the two actions "deal with the same set of operative facts." D.C. No. 3-10-cv-03318, ECF No. 7-2 at 1. She explained that her claims "made ... as a relator for the United States are the same claims that American Tutor alleges to be defamatory" in the state court action.
 

 Id.
 

 See
 

 United States ex rel. Eisenstein v. City of New York
 
 ,
 
 556 U.S. 928
 
 , 930,
 
 129 S.Ct. 2230
 
 ,
 
 173 L.Ed.2d 1255
 
 (2009) (citing Fed. R. Civ. P. 17(a) ) (recognizing that the United States Government "is a 'real party in interest' in a case brought under the [False Claims Act]").
 

 31 U.S.C. § 3730
 
 (b)(1).
 

 JA 65.
 

 We thus respectfully disagree with our dissenting colleague's conclusion that the District Court's finding that Charte had engaged in litigation gamesmanship "is supported by the record." Dissent Op. 355.
 

 Cf.
 

 United States ex rel. Longhi v. Lithium Power Techs., Inc.
 
 ,
 
 575 F.3d 458
 
 , 474 (5th Cir. 2009) (recognizing the public policy objectives of the False Claims Act and disapproving of possible False Claims Act defendants who "insulate themselves from the reach of the [False Claims Act] by simply forcing potential relators to sign general agreements invoking release and indemnification from future suit").
 

 31 U.S.C. § 3732
 
 (a).
 

 Compare
 

 id.
 

 (broadly stating that "[a]ny action ... may be brought in
 
 any judicial district
 
 ")
 
 with
 

 id.
 

 § 3732(b) (stating that "[t]he
 
 district courts
 
 shall have jurisdiction" over certain cases) (emphases added).
 
 See
 

 United States ex rel. Paul v. Parsons, Brinkerhoff, Quade & Douglas, Inc.
 
 ,
 
 860 F. Supp. 370
 
 , 375 (S.D. Tex. 1994) (concluding that "pursuant to the language of the statute, there is concurrent jurisdiction between the federal and state courts").
 

 J-M Mfg. Co. v. Phillips & Cohen, LLP
 
 ,
 
 443 N.J.Super. 447
 
 ,
 
 129 A.3d 342
 
 , 350 (Ct. App. Div. 2015) (discussing
 
 Archbrook Laguna, LLC v. Marsh
 
 ,
 
 414 N.J.Super. 97
 
 ,
 
 997 A.2d 1035
 
 (Ct. App. Div. 2010) ).
 

 See
 

 31 U.S.C. §§ 3730
 
 (b)(2), (b)(4) ;
 
 see also
 
 N.J. Stat. Ann. §§ 2A:32C-5(c), (g).
 

 Our dissenting colleague emphasizes that "Charte never alerted the state court ... to her
 
 qui tam
 
 claim." Dissent Op. 355. This is true. Charte neither filed the
 
 qui tam
 
 action in state court nor informed the state court that she had filed the action in federal court. Nevertheless, had Charte filed the
 
 qui tam
 
 action as a counterclaim in state court, American Tutor would have remained unaware. Additionally, telling the state court about the existence of the federal
 
 qui tam
 
 would have violated the seal, possibly resulting in (1) dismissal, attorney discipline, or monetary penalties,
 
 see
 

 State Farm Fire & Cas. Co. v. United States ex rel. Rigsby
 
 , --- U.S. ----,
 
 137 S. Ct. 436
 
 , 444,
 
 196 L.Ed.2d 340
 
 (2016), and (2) prejudice to the Government by alerting American Tutor of the pending federal investigation.