PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1717
_____

UNITED STATES OF AMERICA

v.

JAMES WEGELER


*Jean Charte,

Appellant

*(Amended Per the Clerk's Order dated 12/27/17)
_____

On Appeal from the United States
District Court for the District of New Jersey
(D.C. Crim. Action No. 3-16-cr-00273-001)
District Judge: Honorable Anne E. Thompson
_____

No. 17-1718
_____

UNITED STATES OF AMERICA, ex rel. ***
JEAN CHARTE

v.

AMERICAN TUTOR, INC., JAMES WEGELER, JR.;
JAMES WEGELER, SR.; SEAN WEGELER**

*Jean Charte,

Appellant

*(Amended per the Clerk's Order dated 12/27/17)
**(Amended per the Clerk's Order dated 1/25/18)
***(Amended per the Clerk's Order dated 5/7/18)
_____

On Appeal from the United States
District Court for the District of New Jersey
(D.C. Civ. Action No. 3-10-cv-03318)
District Judge: Mary L. Cooper
_____

No. 17-8009
_____

UNITED STATES OF AMERICA

v.

JAMES WEGELER

*Jean Charte,

2

Petitioner

*(Amended per the Clerk's Order dated 12/27/17)
_____


On Petition to File an Appeal pursuant to 31 U.S.C. §
3739(b)(2)
from the United States District Court for the District of New
Jersey
(D.C. Crim. Action No. 3-16-cr-00273-001)
District Judge: Honorable Anne E. Thompson
_____


Argued on April 19, 2018
_____


Before: GREENAWAY, JR., RENDELL and FUENTES,
*Circuit Judges*.


(Opinion Filed: October 28, 2019)

Sean F. Byrnes [Argued]
Byrnes O'Hern & Heugle
28 Leroy Place
Red Bank, NJ 07701
    *Counsel for Appellant/Petitioner*

Mark E. Coyne
Anthony J. LaBruna, Jr.
John F. Romano
Office of United States Attorney
970 Broad Street

Room 700
Newark, NJ 07102

Charles W. Scarborough
William E. Havemann [Argued]*
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
        *Counsel for Appellee/Respondent*

———————————

OPINION

———————————

GREENAWAY, JR., *Circuit Judge*.

Our criminal justice apparatus is not the Eye of Providence. Though ever vigilant, it cannot see all, and it is mightily aware of that. So it relies on the eyes and ears of private citizens from many walks of life. These citizens are rewarded for their heroics at times, but their rewards rarely, if ever, amount to an expectation, let alone an interest, that they can pursue in the criminal case of another. This is because, as the Supreme Court has observed, "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or non[-]prosecution of another." *Linda R.S.* ("*Linda*") *v. Richard D.*, 410 U.S. 614, 619 (1973).

Jean Charte insists that she is the anomaly. Her case rests on the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–

———————————

* William E. Havemann withdrew as counsel on July 19, 2018, prior to the issuance of this opinion.

4

3733 (2012), which is a statute that Congress enacted during the Civil War to stem fraud against the federal government. *United States v. Bornstein*, 423 U.S. 303, 309 (1976). The FCA includes a *qui tam*[1] provision to encourage actions by private individuals—called relators—who are entitled to a portion of the amount recovered, subject to certain limitations. *See* § 3730(b), (d). In turn, a relator is required to provide the government with the information she intends to rely on so that the government can make an informed decision as to whether it should intervene. § 3730(b)(2). In the event that the government elects to pursue what is ultimately *its* claim through an "alternate remedy," the statute provides that the relator retains the same rights she would have had in the FCA action. § 3730(c)(5).

Charte instituted an FCA action alleging that the defendants, including James Wegeler, Sr., submitted false reimbursement claims to the United States Department of Education. She provided the requisite information to the government and cooperated with the government while it determined whether it would intervene. During this period, the information she provided led directly to an investigation that resulted in the criminal prosecution of Wegeler, Sr., for tax

---

[1] "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means who pursues this action on our Lord the King's behalf as well as his own." *United States ex rel. Charte v. Am. Tutor, Inc.*, 934 F.3d 346, 347 n.1 (3d Cir. 2019) (internal quotation marks omitted) (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 768 n.1 (2000)).

fraud and tax evasion. Wegeler, Sr. ultimately entered into a plea agreement that required him to pay $1.5 million in restitution. He paid the restitution by the time he was sentenced. Subsequently, the government declined to intervene in the FCA action.

Charte learned of the plea agreement and tried to intervene in the criminal proceeding to secure her alleged interest in a share of the restitution. Her motion to do so was denied, however. Her appeal to us thus presents a question of first impression for our Court: whether a criminal proceeding constitutes an "alternate remedy" to a civil *qui tam* action under the FCA, entitling a relator to intervene in the criminal action and recover a share of the proceeds pursuant to § 3730(c)(5).

We determine that the rights to participate in a proceeding that the alternate-remedy provision provides a relator does not extend to a criminal proceeding. Such a holding would be tantamount to an interest in participating as a co-prosecutor in the criminal case of another. Charte's important aid to the government notwithstanding, she lacks standing to assert such an interest under "the long line of precedent holding that a [private individual] lacks a judicially cognizable interest in [another]'s prosecution" and likewise, "in [another's] sentence." *United States v. Stoerr*, 695 F.3d 271, 277–78 (3d Cir. 2012). Even if we focused on only her alleged interest in a share of the restitution, nothing in the FCA suggests that a relator has a right to intervene in the government's alternative-remedy provision proceeding for the purpose of asserting this interest. The text and sparse legislative history regarding the alternate-remedy provision counsel otherwise, as they together make clear that the court overseeing the FCA suit determines whether and to what extent a relator is entitled to an award. Our holding is

6

straightforward—a *qui tam* relator lacks standing to intervene as to her rights to prosecute a case alongside the government, and lacks a basis to do so as to her right to an award. We will therefore affirm the District Court. As was evident before this action, Charte may pursue her right to an award by conducting the FCA action.

## I. Background

### A. Legal

An action under the FCA can be brought either by the government or a private person "in the name of the Government." 31 U.S.C. § 3730(a), (b). If such a person—known as a relator—files the action, the complaint is filed in camera, sealed for at least sixty days, and served on the government but not the defendant until so ordered by the court. § 3730(b)(2). The government can move for "extensions of the time during which the complaint remains under seal" for good cause. § 3730(b)(3). Before the end of the expiration of time, the government must either "proceed with the action, in which case the action shall be conducted by the Government," or "notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action." § 3730(b)(4).

If the government intervenes and proceeds with the FCA action, "it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action . . . ." § 3730(c)(1). However, the relator retains "the right to continue as a party to the action," subject to certain limitations. *Id*. In addition, the relator "receive[s] at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending

7

upon the extent to which the person substantially contributed to the prosecution of the action." § 3730(d)(1). That amount is reduced to "no more than 10 percent" if

> the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media . . . ."

*Id*.

Where the Government declines to intervene, "the person who initiated the action shall have the right to conduct the action," although "the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the government to intervene at a later date upon a showing of good cause." § 3730(c)(3). When the relator conducts the action, she shall receive an amount "not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement." § 3730(d)(2).

This assortment of rights is rounded out by the FCA's alternate-remedy provision, under which the government may "elect[] to pursue its claim through *any alternate remedy* available to the Government, including any administrative proceeding to determine a civil money penalty." § 3730(c)(5) (emphasis added). And "[i]f any such alternate remedy is pursued in another proceeding, the person initiating the action *shall have the same rights in such proceeding* as such person

would have had if the action had continued under" the FCA. *Id.* (emphasis added). Moreover, "[a]ny finding of fact or conclusion of law made in such other proceeding that has become final shall be conclusive on all parties to" the FCA action. *Id.*

This framework sets the stage for the case at hand.

## B.  Factual and Procedural

Charte worked at American Tutor, Inc., a business that received Title I funds to provide supplemental educational services to New Jersey school districts. She alleged that, during her employment, she noticed questionable billing practices, including billing for absent students and services not provided. She filed a *qui tam* complaint in 2010, after her termination in 2007. The complaint, under the FCA and New Jersey False Claims Act, N.J. Stat. Ann. §§ 2A:32C-1 to -18 (West 2010), alleged that the defendants submitted false claims for reimbursement to the United States Department of Education. The district court stayed the proceeding and kept it under seal until 2017, when the Government ultimately declined to intervene. In the interim, Charte and her counsel "provided information, documents and even deposition testimony from a separate matter" to the government. Appellant Br. 15; *see* JA 83.

While the FCA suit was still unresolved, the government brought criminal charges against Wegeler, Sr. for tax fraud and tax evasion. Wegeler, Sr. pleaded guilty. The plea agreement requested restitution in the amount of $1.5 million representing the tax loss. It states:

9

> This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against JAMES WEGELER. This agreement does not prohibit the United States . . . or any third party from initiating or prosecuting any civil or administrative proceeding against JAMES WEGELER.

Plea Agreement 5, ECF No. 4, *United States v. Wegeler*, No. 16-0273 (D.N.J. June 13, 2016). Wegeler, Sr. paid the restitution amount by the time of sentencing.

In October 2016, before Wegeler, Sr. was sentenced, Charte filed a motion to intervene in the criminal proceeding, alleging a right to a relator's award from the restitution amount. She also filed the same motion in the FCA proceeding. At the hearing on Charte's motion to intervene in the criminal case, the government admitted that it likely would not have focused on Wegeler, Sr., as a potential subject of a criminal proceeding, if Charte had not named him in the *qui tam* action.

The District Court denied the motion, noting that nothing here warranted an exception to the general rule that private citizens "lack[] a judicially cognizable interest in the prosecution or non-prosecution of another" and no Federal Rule of Criminal Procedure permits intervention. JA 10 (quoting *United States v. Kurlander*, 24 F. Supp. 3d 417, 424 (D.N.J. 2014)). It rejected Charte's argument that the criminal proceeding was an "alternate remedy" under the FCA, particularly in this case where the FCA's bar on Internal Revenue Code *qui tam* claims meant that Charte could not have included tax fraud allegations in her complaint.

The district court in the FCA action later granted summary judgment in favor of the defendants. The court applied New Jersey preclusion law and held that Charte's settlement and dismissal of a state case that alleged defamation and other claims arose out of the same transaction and occurrence and among substantially the same parties, therefore barring her FCA suit. Charte appealed the summary judgment decision. Since this case could be affected by that appeal, we held it C.A.V. pending resolution of the appeal. The district court's summary judgment decision was reversed on August 12, 2019. *Am. Tutor, Inc.*, 934 F.3d at 354 (holding that New Jersey's entire controversy doctrine did not apply to bar Charte's federal *qui tam* action). We now turn to this case.

## II. Jurisdiction and Standard of Review

### A. Jurisdiction

Charte's contention comes by way of three appeals, only one of which—the appeal from the denial of intervention in the criminal proceeding, docketed as No. 17-1717—is

properly before us.[2]  The District Court had jurisdiction over that proceeding under 18 U.S.C. § 3231.[3]

We lack jurisdiction over the appeals in the FCA action, No. 17-1718.  Charte filed her notice of appeal in the FCA case concerning the motion to intervene after her thirty days to appeal had expired, *see* Fed. R. App. P. 4(a). The district court never extended the time to appeal.[4]  Thus, even if she were able

---

[2]  We need not determine whether a motion to intervene as of right in criminal cases is immediately appealable as it is in civil cases, *see McClune v. Shamah*, 593 F.2d 482, 485 (3d Cir. 1979), because the notice became ripe once a judgment was entered, *see Khan v. Att'y Gen. of U.S.*, 691 F.3d 488, 494 n.3 (3d Cir. 2012) (stating that a premature notice is sufficient "so long as the notice of appeal adequately advised the government of what was being appealed, the premature filing did not cause prejudice, and the notice of appeal was not filed extraordinarily prematurely").

[3]  The District Court denied Charte's motion to intervene on January 31, 2017, and Charte filed her notice of appeal on March 28, 2017.  The District Court subsequently granted her request for an extension of time to file the notice because of technical issues.

[4]  Charte argues that she was entitled to sixty days to file an appeal in the FCA case because the government, having not decided whether to intervene at the time the notice was filed, was a party to the case.  Her argument is unpersuasive, and her attempt to distinguish *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009), is belied by the clear language in that case.  *Id.* at 931 ("Although the United States is aware of and minimally involved in every FCA action, we

to appeal the interlocutory order, her notice of appeal was untimely, and we lack appellate jurisdiction in No. 17-1718.

Charte's "Petition for Permission to Appeal," (No. 17-8009) meanwhile, was filed fifty-eight days after the District Court's January 31, 2017 order denying her motion to intervene and did not identify any statute or rule authorizing the appeal. We discern no basis to exercise appellate jurisdiction over it, *see* Fed. R. App. P. 5(b)(1)(D), and the earlier referral of the appeal to a merits panel does not eliminate this Court's responsibility to ensure that we have jurisdiction. *Anthony v. Council*, 316 F.3d 412, 416 (3d Cir. 2003); *see also FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990) (We review our subject matter jurisdiction over the matter "even if the courts below have not passed on it, and even if the parties fail to raise the issue before us.").

## B.    Standard of Review

As to the standard of review for No. 17-1717, "[a]lthough we generally review dispositions of motions to intervene for abuse of discretion, the district court here did not exercise discretion in denying the motion to intervene but barred the claims because of its legal conclusion" that Charte does not have a basis to intervene in a criminal proceeding. *Nelson v. Cty. Of Allegheny*, 60 F.3d 1010, 1012 (3d Cir. 1995). Our review is plenary where that is the case. *Id.*

---

hold that it is not a 'party' to an FCA action for purposes of the appellate filing deadline unless it has exercised its right to intervene in the case.").

13

## III. Discussion

Charte casts a wide net in framing the question on appeal,[5] but it is simply "whether a criminal . . . proceeding constitutes an 'alternate remedy' to a civil *qui tam* action under the False Claims Act, entitling a relator to intervene in the criminal action and recover a share of the proceeds pursuant to 31 U.S.C. § 3730(c)(5)." *United States v. Van Dyck*, 866 F.3d 1130, 1131 (9th Cir. 2017). The answer is no. First, a relator lacks standing to intervene in the criminal prosecution of another. Moreover, the FCA does not provide a right to intervene to recover a share of the proceeds derived from a proceeding that the government pursues under the alternate-remedy provision.

---

[5] Charte frames the question in four different ways: as (1) "[w]hether the Court erred when it found that the criminal proceeding against the Defendant James Wegeler, Sr., did not constitute an 'alternate remedy' . . . [,]" (2) "[w]hether the Court erred when it determined that the Relator in this *qui tam* proceeding could not intervene in a criminal proceeding that constituted an 'alternate remedy' . . . [,]" (3) "[w]hether the Relator may recover a relator's share award from the restitution paid by the criminal Defendant within a proceeding that constitutes an 'alternate remedy' . . . [,]" and (4) "[w]hether the Government can rely upon 31 U.S.C. § 3729(d) where as here the Relator has not alleged any violations of the IRC in her Complaint." Appellant's Op. Br. 7.

## A.

The rights the FCA provides to a relator when the government "proceeds with the action" and that would also be afforded to a relator if the government pursues an alternate remedy under § 3730(c)(5) are twofold.

First, a relator "shall have the right to *continue as a party* to the action . . . ." § 3730 (c)(1) (emphasis added). This encompasses a suite of rights to participate in a proceeding pursuant to the alternate-remedy provision, consisting of the rights to: (i) notice and an opportunity to be heard if the government moves to dismiss the action, (ii) object to a settlement so that the court can ensure it is "fair, adequate, and reasonable under all the circumstances," and (iii) an otherwise unrestricted ability to participate "during the course of litigation" unless the government shows that such "unrestricted participation . . . would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant," or if, "for purposes of harassment," the court decides "in its discretion" to "impose limitations on the person's participation . . . ." § 3730(c)(2)(A)–(D). The limitations consist of "**(i)** limiting the number of witnesses the person may call; **(ii)** limiting the length of the testimony of such witnesses; **(iii)** limiting the person's cross-examination of witnesses; or **(iv)** otherwise limiting the participation by the person in the litigation." § 3730(c)(2)(C). Second, a relator has a right to "at least 15 percent but not more than 25 percent" of the proceeds that result from such an action, or, under certain circumstances, "no . . . more than 10 percent." § 3730(d)(1).

The Senate Report regarding this provision sums up many of these rights as: "the *qui tam* relator retains all the same rights to copies of filings and depositions, to objections

15

of settlements or dismissals, to taking over the action if the Government fails to proceed with 'reasonable diligence', as well as to receiving a portion of any recovery." S. Rep. 99-345, at 27 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5292.[6]

---

[6] The Sixth Circuit has noted that "the quoted passage of the Senate Report refers to § 3730(c)(3), not § 3730(c)(5), suggesting that it might refer to an earlier draft of the 1986 FCA amendments." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 648 (6th Cir. 2003). However, the proposed legislative language in the report concerning the alternate-remedy provision is substantially similar to that which appears in the current text. *Compare* S. Rep. 99-345, at 42 ("Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to it, including, but not limited to, any administrative civil money penalty proceeding." (italics removed)), *with* 31 U.S.C. § 3730(c)(5) ("Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty.").

The Sixth Circuit also stated that the report may be internally inconsistent in that it suggests both that the Government must first intervene before pursuing an alternate remedy, *see* S. Rep. 99-345, at 42 ("Subsection (c)(3) of section 3730 clarifies that the Government, *once it intervenes* and takes over a false claim suit brought by a private individual, may elect to pursue any alternate remedy . . . ." (emphasis added)), and that pursuit of an alternate remedy is an either/or, *see id.* ("[T]he Government must elect to pursue

16

1.

The assertion of the first set of rights in the criminal case of another whereby the relator would be a party to the action would amount to an interest in that person's prosecution. Indeed, relators would essentially have a voice in whether and how the government would go about securing a guilty verdict (or plea), as well as in determining the sentence(s) it will ask the court to impose. That is squarely at odds with the long held tradition of American jurisprudence that "a private citizen lacks a judicially cognizable interest in the prosecution or non[-]prosecution of another." *Linda*, 410 U.S. at 619.

---

the false claims action either judicially or administratively . . . ."). *Bledsoe*, 342 F.3d at 648. Courts have adopted that the latter interpretation. *See id.* at 647 ("We hold that 'alternate remedy' refers to the government's pursuit of any alternative to intervening in a relator's *qui tam* action."); *United States ex rel. Barajas v. U.S.*, 258 F.3d 1004, 1010 (9th Cir. 2001) ("An alternate remedy under § 3730(c)(5) is a remedy achieved through the government's pursuit of a claim after it has chosen not to intervene in a qui tam relator's FCA action."); *United States ex rel. LaCorte v. Wagner*, 185 F.3d 188, 192 (4th Cir. 1999) ("Section 3730(c)(5) assumes that the original qui tam action did not continue."); *United States ex rel. Dunleavy v. Cty. of Delaware*, 123 F.3d 734, 739 (3d Cir. 1997) (noting the "Government's right to proceed administratively as an alternate remedy to an FCA action"), *abrogated on other grounds by Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280 (2010).

The tradition derives from the Case or Controversy Clause of Article III of the Constitution, which "establish[es an] irreducible constitutional minimum of" an injury in fact[7] that is caused by the conduct complained of and which is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). While "Congress may enact statutes creating legal rights, the invasion of which creates standing," *Linda*, 410 U.S. at 617 n.3, the injury-in-fact requirement does not dissipate "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016). Congress is merely capable of invoking the absolute limit of this Constitutional floor by "creating legal rights, the invasion of which creates [injury]," where none would have previously existed. *Linda*, 410 U.S. at 617 n.3.

In that vein, as to the interest created by the first set of rights the FCA provides relators, the District Court properly assessed that an interest in the prosecution or non-prosecution of an individual has been considered too generalized and speculative to meet the floor set by Article III. *See, e.g.*, *Lujan*, 504 U.S. at 576 ("Vindicating the *public* interest . . . is the function of Congress and the Chief Executive." (emphasis in original)). Even where Congress has authorized a private individual "to enforce *public* rights in their own names," the Supreme Court has required her to "demonstrate that the violation of that public right has caused [her] a concrete,

---

[7] "Injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural or 'hypothetical[.]'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

individual harm distinct from the general population." *Spokeo*, 136 S. Ct. at 1553. Here, Charte is no different than any other member of the public in terms of the concrete harm she suffered when the government chose to prosecute or not prosecute Wegeler, Sr. Thus, regardless of whether these rights stem from the FCA, she lacks standing to assert them.[8]

2.

Perhaps anticipating the foregoing, Charte says:

> [she] does not seek to intervene in the criminal proceeding proper. James Wegeler, Sr. has already been sentenced and has paid his restitution. [Her] proposed intervention will

---

[8] In that regard, the other instances of third parties being permitted to intervene in criminal proceedings to which Charte points us are inapposite. Those instances concern the adjudication of limited, collateral questions such as the third party's constitutional right to access the proceeding or their right to assert a privilege in the proceeding. *See, e.g.*, *In re Associated Press*, 162 F.3d 503, 506–09 (7th Cir. 1998) (concerning the first amendment right of access to court proceedings); *United States v. Criden*, 675 F.2d 550, 554–57 (3d Cir. 1982) (same); Fed. R. Crim. P. 60 (allowing victims to assert a right to notice of a proceeding, to attend, and "to be *reasonably heard* at any *public proceeding* in the district court concerning release, plea, or sentencing involving a crime" (emphases added)). That is a far cry from being allowed to criminally prosecute another in the name of, and along with, the United States.

> simply be to protect the [her] interest, and that of
> the United States, in [her] share.

Appellant Op. Br. 5. She made a similar statement to the District Court. JA 40 (stating in the preliminary statement of the brief supporting her motion that, "Jean Charte files this Motion to ensure that *monies received* by the United States from Mr. James Wegeler, Sr. are subject to her claim under the False Claims Act." (emphasis added)).

We routinely adjudicate the assertion of statutory-procedural rights regarding similar property interests in criminal proceedings. For example, in criminal forfeiture proceedings, 21 U.S.C. § 853 permits intervention only in limited circumstances "(1) third parties who had a vested interest in the property at the time of the commission of the acts that gave rise to forfeiture, and (2) bona fide purchasers for value without cause to believe the property was subject to forfeiture." *Van Dyck*, 866 F.3d at 1133 (citing § 853(n)(6)).

Charte's assertions are similar: that she has a vested interest in a share of the restitution and that the FCA grants her a procedural right to intervene to protect that interest. The former assertion is aided by the fact that, as to this set of rights, the FCA is "regarded as effecting a partial assignment of the Government's damages claim," such that "the United States' injury in fact suffices to confer standing on" relators in FCA suits. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773–74 (2000) ("[The] adequate basis for the relator's [FCA] suit for his *bounty* is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." (emphasis added)).

20

In that light, a ruling against Charte on this point would require accepting that a relator has standing to "obtain[] compensation for, or prevent[] the violation of" her right to a relator's award, *id.* at 772, but nonetheless saying that she lacks standing to do exactly that, all against the backdrop that we routinely adjudicate similar interests by third-parties in criminal proceedings. To be clear, when it comes to a criminal forfeiture proceeding, we agree that a relator has standing to assert the relator's "statutory procedural right . . . under the alternate-remedy provision to have her relator's share adjudicated in the criminal forfeiture proceeding.". *See United States v. Couch*, 906 F.3d 1223, 1226–27 (11th Cir. 2018) (explaining that the relator's "motion to intervene in a [criminal] proceeding to enforce an alleged property interest is materially different from an attempt to compel a criminal prosecution or alter a sentence"). That agreement notwithstanding, however, we are not persuaded that a relator in fact possesses such a statutory procedural right.

As the government forcefully argues, the text of the FCA "compels the understanding" that "the district court in the [FCA] suit remains responsible for adjudicating the relator's share of the proceeds of an alternate proceeding" brought by the government under the alternate-remedy provision. Appellee Br. 22. The alternate-remedy provision assumes that the FCA suit will continue after the alternate-remedy proceeding has concluded when it states "[a]ny finding of fact or conclusion of law made in such proceeding that has become final shall be conclusive on all parties to an action under this section." 31 U.S.C. § 3730(c)(5). The FCA then provides detailed guidelines for determining a relator's share in the "proceeds of the action or settlement of the claim," where "the government proceeds with [the] action." § 3730(d)(1). That

21

is, that the relator is entitled to "at least 15 percent but not more than 25 percent . . ., depending upon the extent to which the person *substantially contributed* to the prosecution of the action[,]" and "no . . . more than 10 percent" where "the action is one which the court finds *to be based primarily* on disclosures of specific information (other than information provided by the person bringing the action) . . . taking into account the *significance of the information and the role of the person* bringing the action in advancing the case to litigation." *Id.* (emphases added).

While other courts may use the procedural devices available to them to assess the requisite "finding[s] of fact or conclusion of law made in another proceeding," that the FCA outright provides this to the FCA court, as well as that the FCA court is readily apprised of the information a relator provides to the government, is a strong indication that Congress intended the FCA court to be the one to make these comparative determinations. That indication is even stronger when one considers that the provisions setting forth the right to a relator's award are set forth in § 3730(d)(1), labeled "**Award to qui tam plaintiff**," whereas the rights that accompany "the right to continue as a party to the action" are all set forth in § 3730(c)(1) and (2), labeled "**Rights of the parties to qui tam actions**."

Those textual and structural indicia are reinforced by the Senate Report's statement that "[i]f the Government proceeds administratively, the district court shall stay the civil action pending the administrative proceeding and any petitions by the relator, in order to exercise his rights [in such proceeding,] will be to the district court" rather than the court in the proceeding pursued by the government under the alternate-remedy provision. S. Rep. No. 99-345, at 27.

22

Together, these points compel the conclusion that, to the extent that the FCA provides relators a right to intervene in another proceeding, their interest in a share in the proceeds recovered in that proceeding is not among those for which this right is provided.

In other words, Charte is less like third parties in the 21 U.S.C. § 853 context, who are provided an express right to intervene to assert their property interest, than she is like victims, who also have an interest in any restitution that is awarded but are not granted a statutory right to intervene and assert it. *See* 18 U.S.C.A. § 3663A(a)(1) (requiring a court to order restitution "to the victim of the offense or, if the victim is deceased, to the victim's estate"); Federal Sentencing Guidelines Manual § 3E1.1(a) (U.S. Sentencing Comm'n 2016) (requiring that, "[i]n the case of an identifiable victim, the court shall . . . enter a restitution order for the full amount of the victim's loss . . ."); *but see Stoerr*, 695 F.3d at 278 (noting that restitution orders can only be appealed and modified "by the defendant and by the Government," and that "[crime] victims are non-parties to criminal proceedings"); *Kelly v. Robinson*, 479 U.S. 36, 52 (1986) ("Although restitution does resemble a judgment 'for the benefit of' the victim, . . . [t]he victim has no control over the amount of restitution awarded or over the decision to award restitution.").

We are therefore aligned with our two sister circuits that have addressed this question and hold that (1) a relator "lacks standing to intervene in [the] criminal prosecution[] of another" as it pertains to her participation rights, *Van Dyck*, 866 F.3d at 1133, and (2) even if a relator had standing to intervene only as to her alleged interest in her share of the proceeds collected by the government, the "sole remedy" that the FCA provides her is to "commence" or continue the FCA action, *id.*

at 1135 ("The 'alternate remedy' provisions of the False Claims Act do not permit a relator to intervene in a criminal action for the purpose of asserting a right to the proceeds of that action."); *see also Couch*, 906 F.3d at 1228 ("[T]he alternate-remedy provision does not expressly provide a right of intervention in an 'alternate proceeding.'" (emphasis added)).

In so holding, we do not opine on whether a criminal proceeding is an alternate remedy such that a relator retains her FCA rights, including the right to a share in the proceeds.[9] Nor do we need to decide whether, even if a criminal proceeding constituted an alternate remedy, the proceedings here would qualify in light of the fact that 31 U.S.C. § 3729(d) precludes a relator from obtaining a relator's share in a claim under the Internal Revenue Code. *See* § 3729(d) ("This section does not apply to claims, records, or statements made under the Internal Revenue Code of 1986."). District Courts adjudicating FCA suits routinely make these determinations and are best equipped to do so.

\* \* \* \* \*

In the end, then, we maintain "the long line of precedent holding that a [private individual] lacks a judicially cognizable interest in [another]'s prosecution" and likewise, "in [another's] sentence." *Stoerr*, 695 F.3d at 277–78. And Charte

---

[9] Charte's argument that "[d]enying the existence of an alternate remedy works an anomalous outcome that treats [her] less favorabl[y] than tax whistleblowers under Title 26," Appellant Op. Br. 51, speaks to whether she is entitled to a share in the restitution, so it too does not warrant opining.

24

is not the exception she claimed to be: she may not pursue her alleged interest in a relator's award in Wegeler, Sr.'s criminal case. Charte may nonetheless take solace in the government's representation—to this Court and to our two sister circuits that have confronted this question—that it "allow[s] a qualified relator to a share of the full amount of [a] damages award, including the restitution previously paid." Appellee Br. 29 (citing *United States v. Wellcare Health Plans, Inc.*, 2011 WL 4431157, \*2 (M.D. Fla. 2011), where "the Government . . . escrowed 25% of [a] $40 million restitution, pending a resolution of the [related] qui tam cases for [the] purpose" of allowing the "Movant and the other relators" to "participat[e] in the distribution of restitution paid incident to the criminal prosecution"); *see also Couch*, 906 F.3d at 1228–29; *Van Dyck*, 866 F.3d at 1135 n.3. For our part, we will affirm the District Court's order denying her motion to intervene.