DLD-073                                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2885
_____

DANIEL RUSSELL ANDREWS,
Appellant

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS; J. SPYKER, Correctional
Coordinator Program Manager-SCI-Huntingdon; CO III GRASSMIRE; CO III
MCCLOSKY; MS. HAMMON, Library Assistant; CO I FRYE; ELLENBERGER,
Hearing Examiner; CONNIE GREENE, Grievance Coordinator; CO V HOUSE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:22-cv-00077)
District Judge: Honorable Jennifer P. Wilson
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 30, 2025
Before: RESTREPO, FREEMAN, and NYGAARD, <u>Circuit Judges</u>

(Opinion filed: June 10, 2025)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Daniel Russell Andrews, Sr., appeals the District Court's September 26, 2024 order granting defendants' motion for summary judgment. We will summarily affirm the District Court's order.[1]

In the evening of January 17, 2020, Daniel Andrews, then incarcerated at Pennsylvania's State Correctional Institution – Huntingdon, got into a verbal altercation with another prisoner, Guy Bicking. According to Andrews, this altercation occurred after Andrews requested help with a word processing program in the law library, to which an agitated Bicking responded by "offering [Andrews] his genitals," loudly telling Andrews to perform a sexual act, and threatening to "f*** [Andrews] up." A report filed by the only staff member to witness the altercation, Assistant Librarian Harmon, contradicted Andrews' version of events, omitted any mention of the sexual threat, and instead reported that Andrews had threatened Bicking with a beating. After leaving the library, Andrews filed a complaint against Bicking under the Prison Rape Elimination Act ("PREA") with Lieutenant Maxwell.

The next day, Andrews was interviewed by Lt. Grassmyer[2] and Program Manager Spyker regarding his complaint. Around the time of this interview, another corrections officer, Frye, overheard Andrews state "if he does that shit again I'm going to beat his

---

[1] We have jurisdiction under 28 U.S.C. § 1291. Summary action is appropriate if there is no substantial question presented in the appeal. See 3d Cir. L.A.R. 27.4.

[2] As the District Court's order granting summary judgment noted, Andrews' documents spell defendants Grassmyer and McCloskey as "Grassmire" and "McClosky," respectively.

ass," prompting Frye to file a misconduct report. A subsequent investigation by Grassmyer and Spyker found that Andrews was the aggressor in the conflict with Bicking, based on review of the security footage, and the misconducts issued by Hammon and Frye. The misconduct was upheld on all levels of appeal, and Andrews was sentenced to a total of 60 days in restricted housing.

After exhausting the prison grievance process, Andrews filed a timely complaint in the Middle District of Pennsylvania, alleging that the named state actors had violated his constitutional rights in violation of 42 U.S.C. § 1983.[3] Andrews' operative amended complaint alleged that the named defendants had violated his First and Fourteenth Amendment rights by conspiring to file false misconducts against him and denying his disciplinary appeals and grievances, in part to cover for Hammon's failure to promptly report the incident, but also in retaliation for his filing a PREA report against Bicking. He further alleged that Hammon had violated his Eighth Amendment rights by failing to protect him from Bicking, and that Major House had violated his Eighth and Fourteenth Amendment rights by ruling against him in misconduct hearings and sentencing him to a term in restricted housing.[4]

---

[3] Andrews was subsequently transferred to SCI-Frackville on June 14, 2022.

[4] Andrews' amended complaint also attempted to re-plead his previously-dismissed conspiracy claims under state law. While the District Court did not address this claim in its subsequent opinions, it had previously rejected an identical version of this claim because Andrews' complaint had not pled any factual basis to support the existence of a conspiracy. Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184-85 (3d Cir. 2009). Nothing in Andrews' amended complaint or subsequent filings addressed this deficiency.

In screening Andrews' amended complaint, the District Court dismissed all Fourteenth Amendment claims on the grounds that the imposed sanctions did not affect a protected liberty interest. See Burns v. Pa. Dep't of Corr., 642 F.3d 163, 171 (3d Cir. 2011); see also Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This resulted in the complete dismissal of Ellenberger from the action, as well as the dismissal of Fourteenth Amendment claims against defendants Frye, Grassmyer, Spyker, and McCloskey. The Court also dismissed Major House from the action, because the sole basis for Andrews' claim against him was an adverse ruling during the grievance process, and an adverse ruling, on its own, is insufficient to state personal involvement in any underlying constitutional claims. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).[5]

After substantial discovery, the remaining defendants moved for summary judgment on all surviving claims, which the District Court granted. The Court granted summary judgment on all First Amendment retaliation claims, because Andrews was unable to point to evidence in the record which indicated that his PREA complaint

---

[5] The Court also rejected Andrews' motions to amend his complaint, because Andrews sought to add claims under two criminal statutes which lacked a private right of action. **ECF No. 63.** While leave to amend should be freely given "…when justice so requires," Fed. R. Civ. P. 15(a)(2), a District Court may deny leave to amend if the amendment would be futile, as would be the case when a petitioner or plaintiff attempts to bring a claim which they lack a private right to pursue. "This is because, as the Supreme Court has observed, 'in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or non[-]prosecution of another.'" See United States v. Wegeler, 941 F.3d 665, 668 (3d Cir. 2019) (quoting Linda R.S. ("Linda") v. Richard D., 410 U.S. 614, 619 (1973)); see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 190-91 (1994) (noting that the Court is "quite reluctant to infer a private right of action from criminal prohibition alone…").

4

motivated the defendant to file misconducts against him. The Court further concluded that nothing in the record led it to infer causation, because none of the defendants had been named in any of Andrews' civil complaints or grievances prior to this action, and Andrews had not pled any other facts which supported such an inference. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267-68 (3d Cir. 2007); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000). The Court also granted summary judgment on Andrews' remaining Eighth Amendment claim after concluding that Hammon had not "know[n] of and disregard[ed] an excessive risk to inmate health and safety," because by Andrews' own admission, Hammon had no way of knowing that Bicking might pose a threat. Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997); see also Andrews Deposition, ECF No. 66-2 at 18-19 (establishing that Andrews never had a hostile interaction with Bicking prior to the incident at bar).

There is little to add to the District Court's thorough analysis of Andrews' claims. Beyond Andrews' bald allegations of "racial favoritism," nothing in the record indicates that Andrews' complaint against Bicking prompted any unconstitutional retaliation by staff at SCI-Huntingdon. Further, Andrews' misconduct history indicates that his placement in restricted housing was the result of threatening comments he made towards Bicking after the exchange. See Misconducts, ECF Nos. 66-3 and 66-4. While Andrews has continued to baldly allege that these misconducts were secured through fraud or

5

conspiracy by the named defendants, the record is devoid of any evidence on which a rational trier of fact could infer such a conspiracy's existence.[6]

Accordingly, we will summarily affirm the District Court's judgment. <u>See</u> 3d Cir. L.A.R. 27.4.

---

[6] We also agree with the District Court that allowing further amendment of Andrews' complaint would have been futile. <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).