12-3829-cv
United States of America v. DHL Express (USA), Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2012

(Argued:  March 21, 2013    Decided: February 5, 2014)

Docket No. 12-3829-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE UNITED STATES OF AMERICA ex rel.,
            Plaintiff,

KEVIN GRUPP, ROBERT MOLL,
            Plaintiffs-Appellants,

                    v.

DHL EXPRESS (USA), INC., DHL Worldwide Express, Inc., DHL
HOLDINGS (USA), INC.,
            Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, CABRANES, and LIVINGSTON, Circuit Judges.

     Appeal from an order of the United States District Court for the Western District of New York (John T. Curtin, Judge) dismissing a qui tam action for failure to satisfy a statutory notice requirement that applies to shipping-rate disputes.  We vacate and remand.

                              JOHN L. SINATRA, JR. (Daniel C.
                              Oliverio, Reetuparna Dutta, on the
                              brief), Hodgson Russ, LLP, Buffalo,
                              NY, for Plaintiffs-Appellants.

1

LAWRENCE VILARDO (Terrence M. Connors, James W. Grable, Jr., on the brief), Connors & Vilardo, LLP, Buffalo, NY, for Defendants-Appellees.

MICHAEL S. RAAB (Joshura P. Waldman on the brief), Appellate Staff of the Civil Division, for Stuart F. Delery, Principal Deputy Assistant Attorney Genera, U.S. Department of Justice, Washington D.C.; William J. Hochul, Jr., U.S. Attorney for the Western District of New York, Buffalo, NY, for Amicus Curiae United States of America.

WINTER, Circuit Judge:

Kevin Grupp and Robert Moll appeal from Judge Curtin's order dismissing their qui tam action for failure to satisfy a statutory notice requirement. Appellants commenced this action against DHL Express, Inc. and its parent company DHL Holdings, Inc. (collectively, "DHL") under the False Claims Act, 31 U.S.C. § 3729 et seq., alleging that DHL billed the United States jet-fuel surcharges on shipments that were transported exclusively by ground transportation. We vacate and remand.

                        BACKGROUND

We assume the facts as alleged in the complaint to be true. DHL is an international package delivery company. Appellants own MVP Delivery Services and Logistics, a delivery company that served as an independent contractor for DHL. From 2003 to 2008,

DHL provided delivery services to the General Services Administration, the Department of Homeland Security, and the Department of Defense.

During this time, DHL offered three types of so-called "Air Express Services" -- "Same Day", "Next Day", and "Second Day" -- and a "Ground Delivery Service", which provided delivery in one to six business days. Customers who purchased one of the "Air Express Services" were charged a jet-fuel surcharge and those who purchased the "Ground Delivery Service" were charged a diesel-fuel surcharge, without regard to the type of transportation actually used in the delivery. The surcharges were calculated using the monthly jet and diesel fuel price indexes published by the U.S. Department of Energy.

According to appellants, DHL was obligated by its contract with the U.S. Government to charge only the cheaper diesel-fuel surcharge for shipments transported solely by ground. In their complaint, appellants set forth three specific deliveries for which the government was charged the jet-fuel surcharge, even though the shipment was transported exclusively by ground transportation. They further allege that DHL included the jet-fuel surcharge for "Air Express Services" as a matter of common practice, regardless of the actual means of transport used, and that these facts support a finding that DHL knowingly defrauded the U.S. Government.

On November 8, 2011, DHL moved to dismiss the complaint on several grounds. The district court granted the motion, and this appeal followed.

DISCUSSION

We review dismissal pursuant to Rule 12(b)(6) de novo. Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr's Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 730 (2d Cir. 2013).

The district court dismissed the action on the ground that appellants failed to satisfy the statutory notice requirement imposed by 49 U.S.C. § 13710(a)(3)(B). Title 49 governs rates and billing by motor carriers. Section 13710(a)(3)(B) states:

> If a shipper seeks to contest the charges
> originally billed or additional charges
> subsequently billed, the shipper may request
> that the [Surface Transportation] Board
> determine whether charges billed must be
> paid. A shipper must contest the original
> bill or subsequent bill within 180 days of
> receipt of the bill in order to have the
> right to contest such charges.

Id. The Surface Transportation Board (the "STB") is an adjudicatory body within the U.S. Department of Transportation charged with resolving disputes concerning motor carriers' shipping rates. "Section 13710(a)(3)(B) makes clear that such disputes may be brought before the STB, but this provision is not the exclusive provision for resolving such disputes where they are a part of an otherwise valid legal claim for relief, e.g.,

4

under the False Claims Act ("FCA"), 31 U.S.C. § 3729, that may be brought before a court."

A failure to comply with the 180-day rule bars a challenge to a shipping charge before the STB.  At issue in this appeal is whether a failure to comply also bars a shipping-rate challenge before a federal court when brought pursuant to the FCA.  The district court concluded that it does and dismissed the action.  Without deciding how the 180-day rule applies to other kinds of suits brought in court, we vacate on the ground that the 180-day rule cannot apply to a qui tam action under the FCA.

The FCA prohibits any person from "knowingly present[ing], or caus[ing] to be presented, [to the United States government] a false or fraudulent claim for payment."  31 U.S.C. § 3729(a)(1)(A).  The Attorney General may institute an action against a party who violates the FCA, id. § 3730(a), or a private individual, known as a relator, may bring a civil qui tam action on behalf of the government and share in the recovery therefrom, id. § 3730(b)(1), (d).  After filing a qui tam complaint, the relator must serve a copy of the complaint on the government, and the government may elect to intervene and litigate the action.  Id. § 3730(b)(2), (4).  If the government declines to intervene, the relator shall have the right to proceed.  Id.

A relator's complaint must be filed in camera, and remain under seal for at least 60 days. Id. § 3730(b)(2). The government may move to extend the seal period for good cause shown. Id. § 3730(b)(3). The complaint is not served on the defendant until the court so orders. Id. § 3730(b)(2).

The government, in an amicus brief,[1] contends that application of the 180-day rule to qui tam actions would undermine both the FCA's seal provisions and statute of limitations. We agree. The purpose of the sealing provisions is to allow the government time to investigate the alleged false claim and to prevent qui tam plaintiffs from alerting a putative defendant to possible investigations. U.S. ex rel Pilon v. Martin Marietta Corp., 60 F.3d 995, 998-9 (2d Cir. 1995). The relatively generous statute-of-limitations period -- within six years of the violation or three years after the time at which U.S. officials knew or should have known of the violation, whichever occurs last -- serves a similar purpose, ensuring that the government need not rush to file a complaint when such a filing would alert a defendant to an ongoing criminal or civil investigation. See 31 U.S.C. § 3731(b)(1)-(2).

---

[1] The government declined to intervene in this matter, but it filed an amicus brief in support of appellants in the proceedings before this court.

DHL maintains that § 13710(a)(3)(B) and the FCA can be reconciled because the 180-day rule is a notice requirement, not a statute of limitations; so long as relators provide notice to the carrier within the 180-day period, they need not file suit for up to six years. Thus, in DHL's view, because the statutes are not in direct conflict, both must be given effect. See Morton v. Mancari, 417 U.S. 535, 551 (1974) ("[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").

However, this argument ignores the purpose of the FCA's tolling provision. See 31 U.S.C. § 3731(b). In 1986, when Congress amended FCA Section 3731(b) to include the tolling provision –– which permits actions for up to three years after the government's discovery of the violation or the time at which the government should have discovered the violation –– it provided the following justification: "[F]raud is, by nature, deceptive [and] such tolling . . . is necessary to ensure the Government's rights are not lost through a wrongdoer's successful deception." S.Rep. No. 99-345, at 15 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5280. Application of the 180-day rule would

completely nullify the tolling allowance[2] inasmuch as the Government is often unlikely to become aware of fraud immediately following the violation.[3]  For similar reasons, the rule as understood by DHL, would pose an even more substantial obstacle to relators' ability to bring qui tam actions.

CONCLUSION

For the reasons stated herein, we vacate the judgment and remand to the district court.

---

[2] We identify this conflict between the 180-day rule and the tolling provision but have no occasion to decide whether the tolling provision applies in this particular case.  Cf. United States ex rel. Sanders v. N. Am. Bus. Indus., Inc., 546 F.3d 288, 293-96 (4th Cir. 2008) (holding that the tolling provision does not apply to relators in cases where the government declined intervention); United States ex rel. Ven-A-Care v. Actavis Mid Atl. LLC, 659 F. Supp. 2d 262, 273-74 (D. Mass. 2009) (holding that the tolling provision applies to relators, but the limitations period begins to run when a government official learns of the conduct).  The conflict between the tolling provision generally and the 180-day rule is sufficient to show that the 180-rule does not bar suits under the FCA."

[3] DHL contends that if the 180-day rule and the FCA are in conflict, then the former should trump the latter because it is more specific.  See Hinck v. U.S., 550 U.S. 501, 506 (2007) ("[I]n most contexts, a precisely drawn, detailed statute pre-empts more general [statutes]." (internal quotations omitted)).  We reject the contention that Section 13710 is the more precisely drawn of the two statutes.  Although Section 13710 addresses shipping-rate disputes specifically, it does not address fraudulent claims to the government or qui tam actions.

8