FILED
United States Court of Appeals
Tenth Circuit

March 3, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SOUTHERN FURNITURE LEASING,
INC.,

      Plaintiff - Appellant,

v.

YRC, INC.; ROADWAY EXPRESS,
INC.; YELLOW TRANSPORTATION,
INC.; YRC WORLDWIDE, INC.,

      Defendants - Appellees.

No. 19-3262

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:19-CV-02129-KHV-KGG)**
_____

Eric D. Barton, Wagstaff & Cartmell, LLP, Kansas City, Missouri (Nicholas W. Armstrong, Price Armstrong, LLC, Birmingham, Alabama, with him on the briefs), for Plaintiff – Appellant.

Stephen L. Hill, Jr. (Jacqueline M. Whipple with him on the brief), Dentons US LLP, Kansas City, Missouri, for Defendants – Appellees.
_____

Before **MATHESON**, **McHUGH**, and **EID**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

    Southern Furniture Leasing, Inc. ("Southern Furniture") filed this putative

class action against a group of less-than-truckload ("LTL") freight carriers, all

predecessors to or current subsidiaries of YRC, Inc. ("YRC"). Southern Furniture's allegation is that YRC "carried out a widespread and systematic practice of overcharging its customers by intentionally using inflated shipment weights when determining shipment prices." App. 8.

YRC asks that we affirm on the alternate ground that Southern Furniture failed to allege Article III standing. The district court rejected YRC's standing argument, and we agree with its analysis.

The district court granted YRC's motion to dismiss on the grounds that Southern Furniture had only 180 days to contest the alleged overcharges under 49 U.S.C. § 13710(a)(3)(B). We agree with the district court's interpretation of § 13710(a)(3)(B) and therefore affirm.

## I. BACKGROUND

### A. *Factual History*

YRC is an LTL carrier. This means that YRC "consolidate[s] shipments that do not themselves constitute a full trailer to transport and deliver, generally for manufacturing and retail businesses." App. 18.

A business that wants to contract with YRC for shipping must use its pre-printed two-page form contract, where the only blank terms are for the customer's contact information and the weight of the shipment. The two-page contract "provides that the weight entered is '[s]ubject to correction,' and that '[i]f the description of articles or other information on this bill of lading is found to be incorrect or

2

incomplete, the freight charges must be paid based upon the articles actually shipped.'" App. 18 (alterations in original).

YRC does not always rely on a customer's weight estimate when it assesses charges. Rather, the industry standard is for YRC to charge based on actual weight if it reweighs the shipment in question.

If the actual weight is greater than the customer's weight estimate, that is a "positive reweigh." App. 19. Conversely, if the actual weight is less than the customer's weight estimate, that is a "negative reweigh." App. 19.

Starting in September 2005, YRC eliminated negative reweigh corrections, resulting in overcharges. YRC did not, however, inform its customers about its revised reweigh policy.

In December 2018, the Department of Justice unsealed a *qui tam* complaint that revealed YRC's reweighing scheme. Only then did Southern Furniture learn that YRC had been overcharging its customers.

## B. *Procedural History*

On March 8, 2019, Southern Furniture filed a complaint for damages and injunctive relief in the District of Kansas against YRC, Roadway Express, Yellow Transportation, and YRC Worldwide. YRC then filed a motion to dismiss.

The district court had not yet ruled on YRC's motion when Southern Furniture filed an amended complaint. The amended complaint alleged (1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) unjust enrichment; and (4) violations of the Florida Deceptive and Unfair Trade Practices Act.

3

YRC again moved to dismiss. Specifically, YRC argued that Southern Furniture had failed to comply with § 13710(a)(3)(B). In addition, YRC argued that Southern Furniture lacked Article III standing, that Southern Furniture had failed to plead the minimum amount in controversy, and that Southern Furniture had failed to state a plausible claim.

On October 31, 2019, the district court granted the motion to dismiss and entered judgment in favor of YRC. The district court first rejected YRC's standing and amount-in-controversy arguments. With respect to standing, the district court determined that Southern Furniture's amended complaint alleged a concrete injury based on overcharges for shipments. And with respect to the amount in controversy, the district court determined that Southern Furniture's amended complaint alleged an injury to the putative class far in excess of the $5,000,000 amount set forth in the Class Action Fairness Act.

Next, the district court determined that Southern Furniture's alleged overcharges were governed by and did not comply with the 180-day limit set forth in § 13710(a)(3)(B). Moreover, the district court refused to toll the 180-day period because—in its view—§ 13710(a)(3)(B) supplies a statute of repose, not a statute of limitations. Having found in YRC's favor under § 13710(a)(3)(B), the district court expressly declined to address the other arguments raised in YRC's motion to dismiss. Southern Furniture timely filed a notice of appeal.

## II. DISCUSSION

On appeal, Southern Furniture argues the district court erred in dismissing its amended complaint for failure to state a claim. Specifically, Southern Furniture contests the district court's conclusion that § 13710(a)(3)'s time limit applies to this case. YRC argues the time limit does apply and additionally invites us to affirm on the alternate ground that Southern Furniture lacks standing. We address standing, then the adequacy of the allegations in Southern Furniture's amended complaint. We review both issues de novo. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1344 (10th Cir. 2014); *Georgacarakos v. United States*, 420 F.3d 1185, 1186 (10th Cir. 2005).

### A. *Standing*

YRC argues that Southern Furniture's amended complaint is so vague as to the details of Southern Furniture's dealings with YRC that it fails to allege an injury in fact. We disagree.

The Constitution extends the "judicial Power" only to "Cases" and "Controversies." U.S. Const. art. III, § 2. To establish a case or controversy, a plaintiff must possess standing to sue. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

5

hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Defs. of Wildlife*, 504 U.S. at 561. "However, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1221 (10th Cir. 2016) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

We agree with the district court that Southern Furniture has alleged an injury in fact. The amended complaint alleges that, "[l]ike thousands of other small businesses across the country, [Southern Furniture] contracted with YRC to ship goods pursuant to a standard, pre-printed bill of lading." App. 9. Under that contract, the price "was based in part upon weight on multiple occasions." App. 11. When YRC eliminated negative reweighs, Southern Furniture "pa[id] more for shipments than [it] should have." App. 20–21. From those allegations it is reasonable to infer that Southern Furniture contracted with YRC after 2005 but before 2018, *i.e.*, during the period when YRC had secretly eliminated negative reweighs. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). These allegations are therefore sufficient to plausibly claim an injury in fact at the pleadings stage.

## B. *Section 13710(a)(3)*

The statute at issue in this appeal—49 U.S.C. § 13710, "Additional billing and collecting practices"—has an odd history. It was first enacted as part of the Trucking Industry Regulatory Reform Act of 1994 ("TIRRA"), Pub. L. 103-311, § 206, 108 Stat. 1673, 1685. Then it was re-enacted as part of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), Pub. L. 104-88, § 103, 109 Stat. 803, 877–78.

Today, § 13710(a)(3) resides in a subsubsection of the "Additional billing and collecting practices" statute titled "Billing Disputes," which is itself nestled within a subsection titled "Miscellaneous provisions." It provides:

> (A) Initiated by motor carriers.—
>
> In those cases where a motor carrier (other than a motor carrier providing transportation of household goods or in noncontiguous domestic trade) seeks to collect charges in addition to those billed and collected which are contested by the payor, the carrier may request that the Board[1] determine whether any additional charges over those billed and collected must be paid. A carrier must issue any bill for charges in addition to those originally billed within 180 days of the receipt of the original bill in order to have the right to collect such charges.
>
> (B) Initiated by shippers.—
>
> If a shipper seeks to contest the charges originally billed or additional charges subsequently billed, the shipper may request that the Board determine whether the charges billed must be paid. A shipper must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges.

---

[1] The "Board" is the Surface Transportation Board ("STB"). *See* 49 U.S.C. § 13102(1).

49 U.S.C. § 13710(a)(3).

Southern Furniture advances three reasons why its amended complaint is not subject to § 13710(a)(3)'s time limit: First, that § 13710(a)(3) applies only before the STB, not in court. Second, that Southern Furniture is not a shipper. And third, that Southern Furniture's amended complaint does not present a billing dispute. We address these arguments in order.

**1. Section 13710(a)(3) applies in court.**

Southern Furniture's main argument for why § 13710(a)(3)'s time limit does not apply to its putative class action is that the time limit applies only to proceedings before the STB. The plain language of § 13710(a)(3) belies that argument.

"Our primary task in construing statutes is to determine congressional intent, using traditional tools of statutory interpretation." *In re Taylor*, 737 F.3d 670, 678 (10th Cir. 2013) (quotation marks omitted). "Supreme Court 'precedents make clear that the starting point for [the] analysis is the statutory text.'" *Id.* (alteration in original) (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003)).

a. *Plain Language*

Subsections 13710(a)(3)(A) and (B) are parallel provisions. Subsection (A) applies to "motor carriers" and subsection (B) applies to "shippers." Each subsection contains two sentences. The first sentence gives motor carriers and shippers the permissive right to petition the STB for a determination as to whether contested charges must be paid.

The two subsections differ as to the second sentence. The second sentence of subsection (A) states that a carrier "must issue any bill for charges in addition to those originally billed within 180 days of the receipt of the original bill in order to have the right to collect such charges." The second sentence of subsection (B) states that a shipper "must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges."

Nothing in § 13710(a)(3) suggests that a motor carrier's or shipper's right to collect or contest charges is limited to actions before the STB. Rather, subsection (A) sets a time limit to "issue any bill for charges," and subsection (B) sets a time limit to "contest the original bill or subsequent bill."

A shipper may contest charges before the STB, in federal court, or in other fora. "Contest," when used as a verb, is not specific to litigation. It means "[t]o litigate *or* call into question." *Contest*, Black's Law Dictionary (11th ed. 2019) (emphasis added). So, § 13710(a)(3)'s time limit might better be described as a notice or presentment requirement, rather than a statute of limitations. *See Carolina Traffic Servs. of Gastonia, Inc.–Petition for Declaratory Order*, Fed. Carr. Cas. ¶ 38285, 1996 WL 303722, at *2 (STB May 31, 1996) (describing the time limit as "an additional legal requirement . . . to notify the carrier of a billing dispute, within 180 days of receipt of the bill"); *see also id.* at *3 ("So long as the necessary notification is given to the other party within the 180-day period, the moving party preserves its right of action and may bring an appropriate court action within the applicable statute of limitations period.").

9

The fact that motor carriers and shippers may petition the STB for a determination, but are not required to do so, suggests the time limit applies without regard to that right. In other words, the first and second sentences of subsections (A) and (B) have independent effect. The first sentence speaks to venue, *i.e.*, the option of going to the STB. The second sentence speaks to time. And the fact that the sentences appear together—two in each subsection, one after the other—does not alter their plain meaning.

If Congress had meant to restrict the time limit to actions before the STB, it could easily have done so. For example, Congress could have ended the phrase "in order to have the right to contest such charges" with the words "before the STB." But it did not write the statute that way, or otherwise draw a connection between the time limit and the STB. It is not our job to "add to, remodel, update, or detract from old statutory terms." *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020).

The statute's mandatory language makes the right to contest or collect charges conditional on compliance with the time limit. One definition of "must," when used as a verb, is to "be obliged to." *Must*, Merriam-Webster, https://www.merriam-webster.com/dictionary/must (last visited October 5, 2020). Quite simply, compliance with the 180-day time limit is not optional.

b. *Scope-of-Subparts Canon*

Southern Furniture argues that § 13710(a)(3) applies only before the STB

under the so-called scope-of-subparts canon.[2] Under that canon, "[m]aterial within an

indented subpart relates only to that subpart." Antonin Scalia & Bryan A. Garner,

*Reading Law: The Interpretation of Legal Texts* 156 (2012). Southern Furniture

contends that § 13710(a)(3) is concerned with the STB, so the time limit is likewise

limited to proceedings before the STB.

The premise of Southern Furniture's argument is incorrect. Section

13710(a)(3) speaks *both* to optional proceedings before the STB and to the time limit

for collecting or contesting charges. The entire subsection is indented in two parts,

(A) and (B), and there is no modifying language that appears before or after the

indents.[3] Consequently, to the extent the scope-of-subparts canon tells us anything, it

teaches that all of subpart (A) applies to actions "Initiated by motor carriers," while

all of subpart (B) applies to actions "Initiated by shippers." Accordingly, we find

---

[2] The parties spend many pages debating whether Southern Furniture raised the scope-of-subparts canon in briefing before the district court. We need not resolve this dispute, because "we may depart from the general waiver rule in our discretion." *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992). Here, we exercise our discretion to consider Southern Furniture's scope-of-subparts argument in the interest of correct statutory interpretation, "a strictly legal question." *Id.*

[3] By contrast, the examples Scalia and Garner use to illustrate the scope-of-subparts canon involve multiple levels of indentation. Scalia & Garner, *supra*, at 156–58.

11

nothing in the canon that requires us to construe the first sentence's reference to the STB as overriding our plain language interpretation of the second sentence.

c. *Deference to the STB*

To reiterate, the STB has interpreted § 13710(a)(3)'s time limit to apply generally, whether a party ultimately seeks redress before the STB or a court. *See Carolina Traffic*, 1996 WL 303722, at *3. In this case, neither party asks that we afford the STB's interpretation deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

That is fitting, for it would be inappropriate for us to apply *Chevron* deference to the STB's interpretation. "As the Supreme Court explained in *United States v. Mead Corp.*, 533 U.S. 218 (2001), the initial step of the *Chevron* inquiry is actually to determine whether *Chevron* should apply at all." *Sinclair Wyo. Ref. Co. v. U.S. EPA*, 887 F.3d 986, 990 (10th Cir. 2017). We ask whether "Congress delegated authority to the agency generally to make rules carrying the force of law," and whether "the agency interpretation claiming deference was promulgated in the exercise of that authority." *Id.* at 991 (quoting *Mead*, 533 U.S. at 226–27).

In the context of the ICCTA, there is no evidence Congress intended to delegate to the STB the question whether the 180-day time limit applies in court. And it would be odd for Congress to make such a choice, given the fact that courts have just as much, if not more, expertise than administrative agencies in determining applicable time limits.

12

That leaves us to apply *Skidmore* deference to the STB's interpretation. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (citing "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade"). Yet, the STB's interpretation is grounded in nothing more than the plain language of the statute. So, the STB's interpretation does not add any additional force to our plain meaning analysis.

    d. *Section 14101(b)(2)*

Southern Furniture asks that we look to 49 U.S.C. § 14101(b)(2) to inform our interpretation of § 13710(a)(3). Section § 14101(b)(2) provides that "[t]he exclusive remedy for any alleged breach of a contract entered into under this subsection shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree." According to Southern Furniture, the fact that § 14101(b)(2) contemplates litigation in court indicates that Congress meant for § 13710's time limit to apply only to proceedings before the STB.[4]

Southern Furniture's argument is unpersuasive. Section 14101(b)(2) establishes that if a shipper or carrier wants to allege breach of a contract described in § 14101(b), it must do so "in an appropriate State court or United States district court." But § 14101 says nothing that contradicts, or even calls into question,

---

    [4] YRC did not respond to this argument in its response brief. We exercise our discretion to address the argument despite YRC's oversight, in the interest of correct statutory interpretation. *See Daigle*, 972 F.2d at 1539.

13

§ 13710(a)(3)(B)'s time limit for a shipper to provide notice that it intends to contest a bill.[5] A shipper or carrier can comply with the 180-day limit provided in § 13710(a)(3)(B) and, if the issue remains unresolved, file a breach of contract action in an appropriate court within the applicable statute of limitations. The two provisions are not in tension.

## 2. Southern Furniture is a Shipper.

Southern Furniture's next argument is that § 13710(a)(3) does not apply because Southern Furniture is not a "shipper" within the meaning of the statute. We disagree.

The ICCTA does not define "shipper." In the absence of a statutory definition, we rely on ordinary meaning. *See Bostock*, 140 S. Ct. at 1750. One ordinary meaning of "shipper" is "[s]omeone who contracts with a carrier for the transportation of cargo." *Shipper*, Black's Law Dictionary (11th ed. 2019). Southern Furniture falls within this definition because, according to the amended complaint, Southern Furniture contracted with YRC to transport goods.

---

[5] We express no view on the district court's ruling that § 13710(a)(3) is a statute of repose. Southern Furniture argues in a footnote that the district court's ruling "further shows [its] failure to consider the provision in context." Appellant Br. at 21–22 n.2. This assertion, couched as a subcomponent of Southern Furniture's textual argument about the import of § 14101(b), is not sufficient for us to consider whether equitable tolling is appropriate. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

Southern Furniture resists this straightforward conclusion by invoking the ICCTA's definition of "individual shipper." The ICCTA defines "individual shipper" as "any person who—(A) is the shipper, consignor, or consignee of a household goods shipment; (B) is identified as the shipper, consignor, or consignee on the face of the bill of lading; (C) owns the goods being transported; and (D) pays his or her own tariff transportation charges." 49 U.S.C. § 13102(13).

Southern Furniture focuses on subsection (A) of this definition and argues that it is not an "individual shipper" because it does not ship "household goods." The ICCTA defines "household goods" as

> personal effects and property used or to be used in a dwelling, when a part of the equipment or supply of such dwelling, and similar property if the transportation of such effects or property is—
>
> > (A) arranged and paid for by the householder, except such term does not include property moving from a factory or store, other than property that the householder has purchased with the intent to use in his or her dwelling and is transported at the request of, and the transportation charges are paid to the carrier by, the householder; or
> >
> > (B) arranged and paid for by another party.

49 U.S.C. § 13102(10).

Whether or not Southern Furniture is an "individual shipper," does not bear on whether Southern Furniture is a "shipper," as that term is used in § 13710(a)(3)(B). The ICCTA's definition of "individual shipper" itself twice refers to "the shipper," indicating that the two terms mean different things. 49 U.S.C. § 13102(13).

15

Consequently, the ICCTA's definition of "individual shipper" is not an appropriate guide to the meaning of "shipper" in § 13710(a)(3)(B).

**3. Southern Furniture's Amended Complaint Presents a Billing Dispute.**

Southern Furniture's final argument is that § 13710(a)(3) does not apply because the amended complaint asserts fraud and does not merely "contest . . . charges." Again, we disagree.

In common parlance, the amended complaint seeks to "contest . . . charges." 49 U.S.C. § 13710(a)(3)(B). "Contest," when used as a verb, sometimes means "[t]o litigate or call into question; challenge." *Contest*, Black's Law Dictionary (11th ed. 2019). Southern Furniture alleges that for more than a decade YRC overcharged its customers for LTL shipments, by eliminating negative reweighs. In other words, Southern Furniture is challenging YRC's charges. The allegations in the amended complaint are therefore covered by § 13710(a)(3)(B)'s 180-day time limit.

The only time the phrase "billing dispute[]" appears in § 13710(a)(3) is the subsection's heading. To be sure, "the title of a statute or section can aid in resolving an ambiguity in the legislation's text." *I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991). But we do not see any ambiguity in what it means to "contest . . . charges." 49 U.S.C. § 13710(a)(3)(B). And even if we did identify some ambiguity, Southern Furniture does not explain why the meaning of "billing dispute[]" is narrower than the meaning of "contest[ing] . . . charges" in this context.

In response, Southern Furniture cites *Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc.*, No. 11 CIV. 3130 DLC, 2012 WL 4049955 (S.D.N.Y.

16

Sept. 14, 2012) (unpublished). There, the district court held that § 13710(a)(3)'s 180-day time limit did not apply to a lawsuit that alleged "fraudulent and deceptive business practices" and that asserted "a cause of action under § 14704(a)(2)." *Id.* at 11. Southern Furniture does not assert a cause of action under § 14704(a)(2). And while Southern Furniture does allege fraud, it does so as part of a claim "contest[ing] . . . charges" under § 13710.[6] Consequently, even if *Grocery Haulers* could be read to hold that any claim asserting fraudulent practices is exempt from the 180-day notice requirement, we would find it unpersuasive in light of the plain language of § 13710(a)(3).

Our interpretation of the statute is also not in conflict with the Second Circuit's decision in *U.S. ex rel. Grupp v. DHL Express (USA), Inc.*, 742 F.3d 51 (2d Cir. 2014). There, the Second Circuit held that the 180-day time limit "cannot apply to a *qui tam* action under the [False Claims Act]." *Id.* at 53. But the court reserved the question whether "the 180–day rule applies to other kinds of suits brought in court." *Id.* Here, Southern Furniture does not bring a claim under the False Claim Act or a *qui tam* action.

---

[6] Southern Furniture also cites *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199 (2d Cir. 2017), but that opinion does not mention § 13710. Rather, *U1it4less* held that FedEx's practice of overcharging by "[u]pweighting" certain shipments fell outside § 13708(b)'s prohibition on false or misleading invoices. *Id.* at 202–05.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Southern Furniture's complaint.

*Southern Furniture Leasing, Inc. v. YRC, et al.*, No. 19-3262

**EID**, J., dissenting.

The majority holds that Southern Furniture Leasing's state common law and statutory claims alleging that YRC[1] engaged in a fraudulent scheme to overcharge its customers—including claims of breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and deceptive trade practices—are time-barred under the 180-day limitations period contained in the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), Pub. L. 104-88, § 103, 109 Stat. 803, 877–78. But the language of the 180-day limitation, 49 U.S.C. § 13710(a)(3)(B), applies only when a customer contests a bill before the U.S. Surface Transportation Board, not when it brings an action in court alleging fraudulent overcharging, such as the case here. Because the majority concludes otherwise, I respectfully dissent from its opinion.[2]

As is industry standard for freight carriers, YRC contracted with its customers based on an estimated weight of their shipments and then later reweighed those shipments to determine their actual weights, adjusting charges accordingly. Southern Furniture alleges that, beginning in September 2005, YRC stopped adjusting customer charges downward when reweighs were less than initially estimated, while still adjusting upward when reweighs were more than the initial estimate—all without telling anyone.

---

[1] The complaint is brought against YRC and its affiliates, referred to collectively here as YRC.

[2] I agree with the majority that Southern Furniture has established standing. Maj. Op. at 5–6.

Southern Furniture filed this putative class action suit after the Department of Justice

unsealed a *qui tam* complaint revealing YRC's alleged scheme.

At the heart of this appeal is the interpretation of the following provision from

ICCTA:

(3) Billing disputes.

(B) Initiated by shippers.  If a shipper seeks to contest the charges originally billed or additional charges subsequently billed, the shipper may request that the [Surface Transportation Board] determine whether the charges billed must be paid.  A shipper must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges.

49 U.S.C. § 13710(a)(3)(B).  The majority focuses on the second sentence—and solely

on the second sentence—that states a customer "must contest [the bill] within 180 days of

receipt of the bill in order to have the right to contest such charges."  Because the suit in

this case was brought after the *qui tam* action revealed the alleged scheme to overcharge,

years after YRC presented bills to customers that were the product of the alleged

scheme,[3] the majority reasons the suit is time-barred by the 180-day limitation.

The majority's mistake in my view is its myopic focus on the second sentence.

The 180-day limitation should not be read in isolation but rather in the context of the

entire provision.  Indeed, it is axiomatic that statutory language must be read in context.

Statutory language "cannot be construed in a vacuum.  It is a fundamental canon of

statutory construction that the words of a statute must be read in their context and with a

---

[3] The *qui tam* action revealed the alleged scheme on December 14, 2018.  This suit was brought on March 8, 2019.  The YRC scheme is alleged to have started in September 2005.

2

view to their place in the overall statutory scheme." *Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 100 (2012) (quoting *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)); *accord Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 596 (2004) (It is a "cardinal rule that statutory language must be read in context [since] a phrase gathers meaning from the words around it." (quotations omitted)); *Bd. of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792, 804–07 (10th Cir. 2020) (explaining that the meaning of statutory text must be ascertained through the context in which it exists).

The context at issue here—that is, the first sentence—makes clear that the 180-day limitation contained in the second sentence applies only to billing "contests" brought before the Surface Transportation Board. The first sentence does two primary things. It describes the kind of disputes that are subject to 49 U.S.C. § 13710(a)(3)(B)—namely, when customers ("shippers") want to "contest" a "charge[]" that was "billed." It also describes how such a "contest" can be resolved—namely, the customer may ask the Board to determine whether the charges "must be paid." Turning to the second sentence, the language places a time limitation on when such a "contest" must be made: "A shipper *must contest* the original bill or subsequent bill within 180 days of receipt of the bill in order to have the *right to contest* such charges." § 13710(a)(3)(B) (emphasis added). Surely, the "contest" on which the limitation is placed by the second sentence is the same "contest" described in the first sentence. *See Powerex Corp. v. Reliant Energy Servs.*, 551 U.S. 224, 232 (2007) ("[I]dentical words and phrases within the same statute should normally be given the same meaning."). When read as a whole, § 13710(a)(3)(B)

3

provides that if a customer wants to contest a bill, it can bring such a contest before the Board, but only within 180 days of receiving the bill.

Once it focuses in on the second sentence, which uses an unqualified "must," the majority concludes the 180-day requirement applies in *all* situations where a customer contests a bill, even where the challenge is brought in a court action. Maj. Op. at 10. I agree with the majority that the 180-day limitation is "not optional." *Id.* But the fact that compliance with the limitation is mandatory says nothing about the scope of the limitation in the first instance. The context of the limitation demonstrates that it applies only to billing contests before the Board. Similarly, while the majority suggests that Congress could have included language in the second sentence expressly confining the limitation to proceedings before the Board had it intended that meaning, *id.,* there was no reason for it to do so, as the first sentence already indicates that the provision is addressing billing contests brought before the Board.

The majority's interpretation applying the 180-day limitation to *all* claims that might challenge a bill, rather than just those brought before the Board, is far too broad and impedes other parts of ICCTA with separate statutes of limitation. *See Aulston v. United States*, 915 F.2d 584, 589 (10th Cir. 1990) ("In interpreting statutes . . . we look to the provisions of the whole law."). The majority concedes that the first sentence of § 13710(a)(3)(B) is permissive; a shipper *may* but need not contest shipping charges through Board proceedings. Maj. Op. at 8. Litigation is still an option for shippers. For example, § 14705, which is a section regarding "[l]imitation[s] on actions by and against carriers," expressly states that "[a] person must begin a civil action to recover

4

overcharges within 18 months after the claim accrues." *Id.* at § 14705(b).  In fact, courts

have held that § 14705(b) covers any claim for overcharges brought by a shipper against

a carrier, even when the shipper is alleging state law breach of contract claims.[4]  *Barber*

*Auto Sales, Inc. v. United Parcel Servs.*, 494 F. Supp. 2d 1290, 1295 (N.D. Ala. 2007);

*see also Lear Corp. v. LH Trucking, Inc.*, No. 05-74477, 2008 WL 2610239, at \*10 (E.D.

Mich. July 1, 2008) (adopting *Barber Auto Sales, Inc.* but restricting the statute's

application to interstate shipments).  Yet under the majority's interpretation, claims made

under § 14705 for overcharges would be subject to the 180-day limitation because the

overcharges would have been reflected in bills.[5]

Congress made clear that "[e]xcept as otherwise provided in this part, the remedies

provided under this part are in addition to remedies existing under another law or

common law."  49 U.S.C. § 13103.  Yet application of the 180-day requirement to all

---

[4] Section 14101(b)(2) provides that "[t]he exclusive remedy for any alleged breach of a contract entered into under this subsection shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree."  § 14101(b)(2).

[5] Similarly, § 14704(a)(2) states: "A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 [49 U.S.C. §§ 13501 et seq.] is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part [49 U.S.C. §§ 13101 et seq.]."  Courts have held that claims brought under this section have a 4-year statute of limitations.  *See, e.g, Owner-Operator Indep. Drivers Ass'n v. Landstar Sys.*, 541 F.3d 1278 (11th Cir. 2008); *Owner-Operator Indep. Drivers Ass'n v. United Van Lines, LLC*, 556 F.3d 690 (8th Cir. 2009); *Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, LLC*, 615 F.3d 790 (7th Cir. 2010), *cert. denied*, 562 U.S. 1271 (2011).  That section has been applied in contexts that would now fall under the majority's expansive reading of the 180-day requirement.  *See, e.g.*, *Richter v. N. Am. Van Lines, Inc.*, 110 F. Supp. 2d 406, 415 (D. Md. 2000) (allowing a shipper to sue a carrier for "overbooking [and] unreasonably overestimating shipment weight"); *Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc.*, No. 11 CIV. 3130 DLC, 2012 WL 4049955, at \*11 (S.D.N.Y. Sept. 14, 2012) (unpublished) (applying a four-year statute of limitations to allegations of "fraudulent and deceptive business practices").

disputes involving a bill virtually guts all state causes of action, like those brought here, that allege a fraudulent scheme to overcharge customers. That is because, by their very nature, fraudulent schemes to overcharge are typically concealed from the customer. Here, it is alleged that YRC did not inform customers that it was no longer making downward adjustments to initial estimates, all the while continuing to make upward adjustments. Fatal to Southern Furniture's claims, the majority holds, is the fact that the overcharges were reflected in the bills that Southern Furniture paid and failed to contest within 180 days. Yet customers like Southern Furniture only discovered that they had been allegedly overcharged once the *qui tam* action was released, years after they had paid the bills and long after 180 days has passed. Under the majority's interpretation, then, the sort of fraud alleged in this case simply cannot be addressed by state statutory and common law, in contradiction to the language of § 13103 that expressly preserves such causes of action.

"Adhering to the fair meaning of the text (the textualist's touchstone) does not limit one to the hyperliteral meaning of each word in the text. . . . The full body of a text contains implications that can alter the literal meaning of individual words." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 356 (2012) (footnote omitted). Such is the case here, where the scope of the 180-day limitation in the second sentence of § 13710(a)(3)(B) is defined by the first sentence. Accordingly, I would reverse the district court's order granting YRC's motion to dismiss and remand for further proceedings. I respectfully dissent.